[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12080

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2011
JOHN LEY
CLERK

D.C. Docket No. 5:04-cv-00618-LSC-TMP

ROBIN D. MYERS,

Petitioner - Appellant,

versus

RICHARD ALLEN,
Commissioner, AL DOC,
ATTORNEY GENERAL
of Alabama,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 31, 2011)

Before DUBINA, Chief Judge, BARKETT and BLACK, Circuit Judges.

PER CURIAM:

Robin Myers, an Alabama prisoner on death row, appeals from the district

court's denial of his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. On appeal, Myers raises two substantive claims: that his death sentence is improper because he is mentally retarded under Atkins v. Virginia, 536 U.S. 304 (2002); and that the prosecution's withholding of exculpatory evidence impermissibly tainted the trial under Brady v. Maryland, 373 U.S. 83 (1963).

He also argues that the district court improperly denied his whole petition as untimely pursuant to 28 U.S.C. § 2244(d)'s one-year statute of limitations on two different grounds. First, and applicable to all claims, Myers argues that because of his attorney's abandonment, he is entitled to equitable tolling of the statute of limitations. Second, Myers argues that even if equitable tolling does not render the petition timely, the statute of limitations for the Brady claim should begin to run from the date he discovered the exculpatory evidence.

## I. Procedural Background

In 1994, a jury found Myers guilty of a 1991 murder[1] and at the penalty phase recommended a verdict of life without parole. The trial court overruled the jury recommendation and imposed a death sentence without discussion. Myers appealed his conviction and sentence to the Alabama courts, which affirmed. See

---

[1] Myers unlawfully entered the victim's house late at night, stabbed her and her cousin, and stole the victim's VCR, which he later traded for crack cocaine. The cousin survived. Myers admitted to police—and later testified at trial—that he found the VCR, but claimed that he had found it in the bushes near his house.

Myers v. State, 699 So. 2d 1281 (Ala. Crim. App. 1996); Ex parte Myers, 699 So. 2d 1285 (Ala. 1997), cert. denied Myers v. Alabama, 522 U.S. 1054 (1998).

Shortly after the Supreme Court denied certiorari on January 12, 1998, Attorney Earle Schwarz agreed to represent Myers pro bono in post-conviction proceedings and filed a petition pursuant to Alabama Rule Criminal Procedure 32 in the circuit court. Schwarz did not file the petition until December 21, 1998, eleven months—or, more precisely, 343 days—after the Supreme Court's denial of certiorari rendered Myers conviction final and began running the one-year statute of limitation for federal habeas. Schwarz also failed to comply with the state post-conviction court's deadlines. He had sixty days to assemble affidavits in support of Myers's Atkins claim, but he failed to gather them and instead waited until the deadline to request more time. The court denied that request and then denied the petition without a hearing. Schwarz filed Myers's appeal to the Alabama Court of Criminal Appeals, but after filing the briefs, he abandoned Myers without telling either Myers or the courts of his abandonment.[2] Although the Criminal Appeals Court denied Myers's appeal in February 2003, he believed his appeal was pending until February 2004, when the Alabama Attorney General sent Myers a copy of a letter mailed to Schwarz advising that they were seeking an

---

[2] Schwarz, a Memphis, Tennessee, attorney, was employed at Waring Cox, PLC when he undertook his representation through the American Bar Association's Death Penalty Representation Project. He then moved to Glankler Brown, PLLC.

execution date because Myers's time for filing appeals had expired. Other prisoners then assisted Myers with locating new counsel who filed a federal habeas petition on March, 25 2004.

Myers twice amended his petition, with the district court's permission. The district court referred the case to a magistrate judge, who conducted discovery and held evidentiary hearings on the timeliness of Myers's petition and the substance of his Atkins and Brady claims. Myers and the government presented lay and expert witnesses who testified to Myers's cognitive abilities and deficiencies. After hearing the evidence, the magistrate recommended that the petition be denied as untimely, finding that Myers had not acted with the reasonable diligence required for equitable tolling of the statute of limitations.[3] Alternatively, the magistrate also ruled on the merits of Myers's Atkins claim, concluding that it was unsupported by the record for two reasons: first, the parties did not dispute that Myers currently tests above the mentally retarded range of intellectual ability; and second, the court accepted the government experts' opinions that the one IQ test below the threshold of 70 conducted in Myers's youth was not representative of his actual IQ. As to the Brady claim, the magistrate first recommended that claim be dismissed as untimely, but alternatively found that it failed on the merits

---

[3] The magistrate also noted Schwarz's abdication of responsibility and, sua sponte, filed formal complaints against him with the Alabama and Tennessee Bar Associations.

because the withheld evidence was immaterial.[4]  The district court adopted the magistrate's reports and recommendations and dismissed the petition as untimely pursuant to 28 U.S.C. § 2244(d).

The district court granted a certificate of appealability on three issues: (1) whether Schwarz's abandonment and Myers's cognitive impairments entitled Myers to equitable tolling of the § 2244(d) statute of limitations sufficient to render the whole petition timely; (2) whether he is mentally retarded and thus ineligible for the death penalty under Atkins, notwithstanding the statute of limitations; and (3) whether the statute of limitations on Myers's Brady claim began to run from the date he discovered its factual predicate, or when he could have discovered it, such that it is timely.

## II. Discussion

We have considered the parties' briefs and oral arguments of counsel, as well as reviewed the record of the several evidentiary hearings held by the magistrate judge on the merits of Myers's claims, and we find no reversible error.

As the government conceded at argument, the question of whether Myers pursued his claims with reasonable diligence is a mixed question of fact and law, with factual findings reviewed for clear error and legal questions reviewed de

---

[4] Myers himself—and two other witnesses—had testified to the very facts that he alleged the withheld Brady material would have undermined.

novo.  See Helton v. Sec'y for Dept. of Corr., 233 F.3d 1322, 1325 (11th Cir. 2000); Santa Maria v. Pac. Bell, 202 F.3d 1170, 1175 (9th Cir. 2000) (holding that undisputed facts yield a legal question) (quoted with approval by Helton, 233 F.3d at 1325 n.7).  Both sides essentially agree on the relevant facts.[5]  Thus, the question is purely a legal one: Can a petitioner who is not mentally retarded and who has exercised no diligence at all be considered to have exercised reasonable diligence?

Under our law, Myers's failure to allege that he took any steps to attempt to advance or monitor his case is fatal to his equitable tolling argument.  Myers is entitled to equitable tolling "if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 560 U.S. __, 130 S.Ct. 2549, 2562 (2010) (citations and quotation marks omitted).  While Schwarz's inexcusable abandonment is strikingly similar to the "extraordinary circumstance" of abandonment in Holland, we need not reach that issue because Myers cannot show that he has exercise reasonable diligence in pursuing his rights.

Myers bears the burden of presenting "evidence showing reasonable efforts

---

[5] Myers concedes that there is no evidence of any diligence on his part.  He does challenge some of the district court's factual finding relevant to his Atkins claim, and thus to tolling, but he concedes that he is not currently mentally retarded.  Further, as discussed below, we are compelled to accept the court's mental retardation findings under a clear error review.

to timely file his action." <u>Dodd v. United States</u>, 365 F.3d 1273, 1277 (11th Cir. 2004) (citing <u>Drew v. Dep't of Corr.</u>, 297 F.3d 1278, 1286-89 (11th Cir. 2002)). Myers need only show "an appropriate degree of diligence for someone in his situation." <u>Dodd</u>, 365 F.3d at 1283. Efforts reasonably expected of one petitioner might be unattainable for another. <u>See</u> <u>Hunter v. Ferrell</u>, 587 F.3d 1304, 1309-10 (11th Cir. 2009) (holding that petitioner's mental retardation could entitle him to equitable tolling if he demonstrates a "causal connection" between his delay and his intellectual disability). Myers claims that his cognitive impairments and reliance on counsel who had abandoned him made it reasonable for Myers to do nothing until he learned that his execution was scheduled. Although Myers's circumstances do yield a very low bar for what level of diligence is reasonable, he still bears the burden of showing he did something to at least attempt to inquire into the status of his case. We find no clear error in the district court's relevant factual findings and cannot say that the court erred in concluding that Myers is not entitled to equitable tolling because he failed to demonstrate any diligence at all.

As to the second and third issues, we also find no reversible error on the court's rulings on the substance of the <u>Atkins</u> and <u>Brady</u> claims.[6] The district

---

[6] "A district court's factual findings in a habeas corpus proceeding are reviewed for clear error. An alleged <u>Brady</u> violation presents a mixed question of law and fact, which this court reviews <u>de</u> <u>novo</u>." <u>Wright v. Hopper</u>, 169 F.3d 695, 701 (11th Cir. 1999) (citations and quotation marks omitted).

court held extensive hearings on both claims. The court found that Myers had a current IQ of over 80, had not shown that he had at any time exhibited an IQ of below 70, and could not show sufficient intellectual impairment.

Similarly, the court found that the testimony that Myers would have challenged with the Brady evidence was immaterial to the outcome. The testimony that Myers sought to impeach with the withheld Brady material comprised the following: that Myers was the person who sold the victim's VCR on the night of the murder. However, Myers himself told the police he had sold a VCR, explaining that he had found it in some bushes. Moreover, he and other witnesses testified to the same facts at trial.[7] Because we agree that the testimony is not material, it is therefore unnecessary to determine if the Brady claim was timely under 28 U.S.C. § 2244(d)(1)(D), which begins to run the statute of limitations from "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." On this record, we find no reversible error.

**AFFIRMED**.

---

[7] Myers argued for the first time at oral argument a new theory of the testimony's materiality: that the harmful testimony was not that Myers had sold the VCR, as Myers admits, but that Myers was the only person to sell a VCR that night. Myers's theory is that both he and another suspect both sold VCRs in exchange for crack cocaine on the night in question. Even under this new theory, the withheld evidence alone cannot "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Cone v. Bell, 556 U.S. __, 129 S. Ct. 1769, 1783 (2009).